UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY YOPP,

    Plaintiff,

v.

KEATH BARTYNSKI ET AL.,

    Defendants.
_____/

Case No. 18-cv-12866

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [48] [50]**

On August 27, 2018, Plaintiff Gregory Yopp commenced this 42 U.S.C. §1983 action against Defendants Keath Bartynski and the City of Highland Park in Wayne County Circuit Court. Plaintiff's Complaint alleges Assault and Battery (Count I), Gross Negligence (Count II), Intentional Infliction of Emotional Distress (IIED) (Count III), Fourth Amendment Excessive Force against Defendant Bartynski (Count IV), and Municipal Liability against Defendant City of Highland Park (Count V). (ECF No. 54). On September 14, 2018, Defendants, pursuant to 28 U.S.C. §1441, filed a notice of removal in the Eastern District of Michigan. (ECF No. 1).

Before the Court is Defendants' Motion for Summary Judgment [48] filed on January 7, 2021. (ECF No. 48). Plaintiff filed a Response [51] on January 28, 2021. (ECF No. 51). Defendants filed a Reply [53] on February 26, 2021. (ECF No. 53).

Defendants waived oral argument and the Court has determined that the Motion [48] can be decided without a hearing pursuant to Local Rule 7.1(f)(2). E.D. MICH. LR 7.1. As Plaintiff failed to address the Assault and Battery (Count I) and Gross Negligence (Count II) claims in his Response [51], these claims have been abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). Regarding the remaining claims, for the reasons stated below, Defendants' Motion for Summary Judgment [48] [50] is **DENIED**.

## FACTUAL BACKGROUND

On January 14, 2018, Officer Keath Bartynski responded to a slumper call. (ECF No. 48-2, PageID.955). According to central dispatch, an individual was passed out at the wheel of a motor vehicle. (*Id.*). Upon arriving on scene, a gas station, Bartynski was told by a bystander that the vehicle was still running and in drive. (*Id.*). Accordingly, Bartynski parked his patrol car in front of the vehicle to prevent it from going into traffic. (*Id.*). The parties provide divergent accounts of the subsequent events.

1) Plaintiff's Account:

Yopp recalls being behind the wheel of a vehicle at a gas station. (ECF No. 48-5, PageID.1059). He stopped the vehicle as he was experiencing stomach pain--

a condition for which he was prescribed medication but does not recall whether he took any that day. (*Id.* at 1095-96). As the vehicle idled, Yopp's head was on the headrest while his foot was on the brake. (*Id.* at 1097). He acknowledges that his son was in the back seat. (*Id.* at 1096).

Soon, a police officer approached the driver's side of the vehicle. (*Id.* at 1098). Yopp confirms that the officer was Defendant Bartynski. (*Id.* at 1099). The door was locked but Bartynski tapped on the window and tried to open the door. (*Id.*). Yopp then rolled down the window and asked Bartynski what was going on. (*Id.* at 1100-01). Yopp claims Bartynski did not respond and continued to pull on the door handle until Yopp finally unlocked the door. (*Id.* at 1102). Yopp again asked Bartynski what was going on. (*Id.*).

Yopp alleges that Bartynski then immediately grabbed his throat, pulled him out of the car, and threw him onto the concrete face first. (*Id.* at 1103-04). Yopp adds that he hit his head and his scalp was bleeding. (*Id.* at 1106). Yopp then told Bartynski that he is the mayor's son. (*Id.* at 1104). He claims that Bartynski, with his knee and elbow on Yopp's back and neck, respectively, replied "[i]f you say this shit again, I'm going to break your fucking arm." (*Id.* at 1107). Yopp claims he then told Bartynski he wanted a lawyer. (*Id.*). Bartynski then handcuffed Yopp and pulled him up by his belt buckle. (*Id.* at 1107-08).

After being escorted to Bartynski's patrol car, Yopp claims he asked Bartynski "What I do to deserve that? Why you beat me up like that?" (*Id.* at 1111). Yopp alleges that Bartynski replied by stating "Man, if I wanted to hurt you, believe me, you would be in a hospital." (*Id.*). Yopp was then taken to Henry Ford Hospital. (*Id.*). He does not recall whether he made injury complaints to the hospital staff nor whether he received any treatment. (*Id.* at 1113-14).

Parts of Yopp's account are corroborated by Randall Moore. Moore is an employee of GameHeadz, a video game store across the street from the gas station. (ECF No. 51-4, PageID.1347). He attests that Bartynski "forcefully yanked [Yopp] out of the truck and forced him into the concrete ground." (*Id.* at 1348). Bartynski then placed his knee on Yopp's back despite there being no resistance from Yopp. (*Id.*). Moore describes the force Bartynski used as "uncalled for" and "unnecessary." (*Id.*).

2) Defendant's Account:

Bartynski approached Yopp's vehicle and knocked on the driver's side window. (ECF No. 48-2, PageID.955). Bartynski claims that Yopp was unconscious. (*Id.*). After knocking on the driver's side window several times, Bartynski alleges that Yopp "sprung up and kind of looked at me in a dazed state." (*Id.*). Bartynski notes he suspected Yopp to be intoxicated or under the influence of narcotics as his face was drooping. (*Id.*).

Despite ordering Yopp to roll down the window and put the vehicle in park, Bartynski claims Yopp was not "coherent enough to understand" his orders. (*Id.*). Yopp ultimately placed the vehicle in park following several orders. (*Id.* at 964). Bartynski then opened the driver's side door and asked Yopp to step from the vehicle. (*Id.*). Bartynski claims that Yopp "mumbled something to the effect that he wasn't going to step from the vehicle, that he lived close by, that he was just going to drive home." (*Id.*). Bartynski again asked Yopp to step out from the vehicle and Yopp again gave the same reply.

Bartynski then noticed a child in the back seat, asked Yopp to step from the vehicle, and grabbed Yopp by the shoulder of his shirt. (*Id.*). Bartynski alleges that Yopp then began to step out of the vehicle, but his legs were too limp and began to fall. (*Id.* at 965). Bartynski pulled back and lowered Yopp to the ground face down. (*Id.*). Bartynski then placed Yopp in handcuffs. (*Id.*). Bartynski states that although "sometimes you put a knee on their . . . back" when handcuffing suspects, he does not recall whether he did so to Yopp. (*Id.*).

While transporting Yopp to the hospital, Bartnyski asserts that Yopp asked him why he had to "rough me up like that." (*Id.* at 958). Bartynski responded by saying "You know damn well I didn't rough you up." (*Id.*). Bartynski claims that Yopp replied by saying "You're right. That's my bad. My bad." (*Id.*). Upon arrival at the hospital, Bartynski states that he did not observe any injuries on Yopp. (*Id.* at

966). Bartynski also claims he did not hear Yopp make injury complaints to the hospital staff. (*Id.* at 968).

Bartynski's account is corroborated by Officer Eric Clayton. Clayton responded to the gas station while working on secondary employment. (ECF No. 48-4, PageID.994). Officers on secondary employment are hired to do security in a particular area while equipped with uniform, a patrol car, and radio. (*Id.*). Clayton states that he saw Bartynski grab Yopp by the shoulder. (*Id.* at 997). Bartynski then placed Yopp on the ground and handcuffed him. (*Id.*). Clayton also notes that he observed Yopp to be "in a stupor, lethargic, his legs were real rubbery, he was incoherent . . . he was really out of it, like he was drunk or high." (*Id.* at 998). Clayton later accompanied Yopp first to jail and then to the hospital. (*Id.* at 1008). At the hospital, Clayton alleges he did not observe any injuries on Yopp. (*Id.* at 1009). Clayton does not recall whether Yopp made any injury complaints to the hospital staff. (*Id.* at 1010).

## LEGAL STANDARD

Summary judgement is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has

the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Additionally, the Court views all of the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

### I. Count III: IIED

Defendants do not assert governmental tort immunity for this claim. Because a government employee must raise governmental immunity as an affirmative defense, the Court will proceed directly to the merits. *See Odom v. Wayne Cnty.*, 482 Mich. 459, 461 (2008). The Court finds there are genuine disputes of material fact as to whether Defendant Bartynski's conduct was extreme and outrageous and whether it was intentional or reckless. Accordingly, summary judgment is denied on this claim.

To establish a prima facie IIED claim under Michigan law, "[t]he plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Courser v. Michigan House of Representatives*, 831 F.

App'x 161, 182–83 (6th Cir. 2020) (quoting *Lucas v. Awaad*, 299 Mich. Ct. App. 345, 359 (2013)).

"'Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Lucas v. Awaad*, 299 Mich. Ct. App. 345, 359 (2013) (quoting *Doe v. Mills*, 212 Mich. Ct. App. 73, 91 (1995)). "'[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id.* Accordingly, "[t]he test is whether 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Swain v. Morse*, 332 Mich. Ct. App. 510, 534 (2021) (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) (quotation marks and citation omitted)). To ascertain extreme and outrageous conduct, "it is essential to look to the context in which the alleged offensive conduct occurred, for what may be extreme and outrageous under one set of circumstances may be justifiable under different circumstances." *Rosenberg v. Rosenberg Bros. Special Acct.*, 134 Mich. Ct. App. 342, 351 (1984). "[W]here reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Hayley v. Allstate Ins. Co.*, 262 Mich. Ct. App. 571, 577 (2004).

Here, Plaintiff alleges Bartynski grabbed him by the throat, pulled him from his vehicle, threw him onto the ground face first, and threatened to break his arm, even though he posed no apparent threat. (ECF No. 51, PageID.1312). Defendants counter that Bartynski's conduct was neither extreme nor outrageous because he had probable cause to arrest Plaintiff. (ECF No. 48, PageID.941). A reasonable jury could conclude that such conduct by law enforcement surpasses "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" and is "intolerable in a civilized community." *Lucas*, 299 Mich. Ct. App. at 359 (internal quotations omitted); *see also Hayes v. Langford*, No. 280049, 2008 WL 5158896, at *6 (Mich. Ct. App. Dec. 9, 2008) (911 operator insulting a gunshot victim and threatening them with legal repercussions for making false 911 calls held to be outrageous "[i]n light of defendant's position of authority as a 911 operator, and considering defendant's actual knowledge of plaintiff's life-threatening medical condition."). Because reasonable individuals could differ as to whether Defendant Bartynski's conduct was extreme and outrageous under these circumstances, the Plaintiff has raised a question of fact for the jury to determine.

Defendants also argue that Plaintiff has failed on the intent element. Defendants assert Plaintiff presented no evidence that Defendant Bartynski acted with the requisite intent to cause him severe emotional harm. (ECF No. 48, PageID.941). This is untrue. Plaintiff does allege facts that, taken as true, could lead

a reasonable jury to conclude Bartynski acted with intent or recklessness. For example, Plaintiff alleges Bartynski pulled him from the car by his throat, threw him onto a concrete surface face first, and threatened to "break [his] fucking arm." (ECF No. 51, PageID.1291). A reasonable jury could conclude this demonstrates an intent to cause Plaintiff severe harm, or at least recklessness with respect to that risk. Defendants dispute both these factual claims and whether they demonstrate an intent to harm. Whether these acts occurred and, if so, whether they were done with an intent to cause Plaintiff severe harm or recklessness with respect to that possibility are factual questions for the jury to resolve.

Plaintiff has raised genuine disputes of material fact as to whether Defendant Bartynski engaged in extreme and outrageous conduct and whether such conduct was intentional or reckless. Summary judgment is therefore denied for Plaintiff's IIED claim.

### II. Count IV: Fourth Amendment Excessive Force

Plaintiff alleges the following claims against Defendant Bartynski under 42 U.S.C. §1983: 1) Wrongful Search and Seizure, 2) Excessive Force, and 3) Retaliatory Arrest, and 4) Due Process. (ECF No. 54, PageID.1547). As Plaintiff failed to address the Wrongful Search and Seizure, Retaliatory Arrest, and Due Process claims in his Response [51], these claims have thus been abandoned. *See Brown*, 545 F. App'x at 372.

As Defendants fail to assert qualified immunity for the Excessive Force claim, the Court proceeds directly to the merits of this claim. Since the Court finds that Plaintiff has established a genuine dispute of material fact as to whether Defendant Bartynski's conduct constitutes excessive force, summary judgment is denied for on Plaintiff's Excessive Force claim.

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person" is evaluated under the Fourth Amendment's "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In making this evaluation, courts look at 1) the severity of the crime at issue, 2) "whether the suspect poses an immediate threat to the safety of the officer or others" and 3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Here, Plaintiff argues that a dispute of fact exists under this claim. (ECF No. 51, PageID.1285). Specifically, Plaintiff argues that because Yopp was "not committing any crime and was not resisting, fleeing or causing any commotion that

would indicate a threat to Bartynski . . . Bartynski used excessive force on . . . Yopp." (ECF No. 51, PageID.1301).

Defendants cite to *Graham v. Connor*, 490 U.S. 386, 397 (1989) and argue that whether the officer's conduct is objectively reasonable must be viewed "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (ECF No. 48, PageID.931). Defendants concede that, because Yopp "was so lethargic and incoherent that he was unable to stand on his legs . . . there was no need to use any force." (*Id* at 932.).

Additionally, Defendants argue in their Reply [53] that Plaintiff's reliance on *Phelps v. Coy*, 286 D.3d 295 (6th Cir. 2002) is "clearly distinguishable" from this case. (ECF No. 53, PageID.1445). They argue that in *Phelps*, an officer had witnessed the defendant beat the plaintiff, yet in this case, "Plaintiff cannot produce an eyewitness on his alleged beating by . . . Bartynski either before or after he was handcuffed." (*Id.* at PageID.1447-48). The Court rejects this argument. This is because a sworn affidavit of Randall Moore, who worked across from the scene of these events, testified that "[t]he white police officer forcefully yanked the black male out of the truck and forced him into the concrete ground." (ECF No. 51-4, PageID.1348). Moore adds that "[t]he black male was not resisting even though the white police officer unnecessarily put his knee into his back." (*Id.*).

Page **12** of **20**

In this case, the parties do not dispute that Plaintiff Yopp was not actively resisting arrest or attempting to evade arrest by flight. Accordingly, the dispute lies in the severity of the crime at issue and whether the suspect posed an immediate threat to the safety of the officer or others.

Regarding the severity of the crime at issue, Yopp was booked for operating a vehicle while intoxicated with a person less than 16 years of age occupying the vehicle, operating a vehicle with a license suspended/revoked/denied, and reckless driving. (ECF No. 48-1, PageID.950). Plaintiff argues that Yopp was not committing any crimes. (ECF No. 51, PageID.1301). Regardless of whether he committed any crimes, it is sufficient that he was suspected of committing a crime. *Kirk v. Calhoun Cty., Michigan*, No. 19-2456, 2021 WL 2929736, at *6 (6th Cir. July 12, 2021). Therefore, this factor weighs in Defendants' favor.

Next, the Court must determine whether Plaintiff Yopp posed an immediate threat to the safety of Defendant Bartynski or others. Here, Defendants argue that Bartynski's concerns stemmed from both Yopp and the child's safety. (ECF No. 48, PageID.932). It is for these reasons that Bartynski handcuffed Yopp. (*Id.*). On the other hand, Plaintiff argues that Yopp did not cause "any commotion that would indicate a threat to Bartynski." (ECF No. 51, PageID.1301). Because Plaintiff's account suggests that a reasonable jury could find that Yopp did not pose an immediate threat, the Court finds that Plaintiff has established a genuine dispute of

material fact regarding whether Defendant Bartynski's conduct was objectively reasonable. Accordingly, summary judgment is denied for the Excessive Force claim. A jury question exists as to whether Bartynski's conduct was objectively reasonable and whether it constituted excessive force.

### III.  Count V: Municipal Liability

To prevail on his municipal liability claim, Plaintiff must show not only that his constitutional rights were violated, but also that the "violation occurred because of [an official] municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A municipality "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694; *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In addition, "municipal policy must be 'the moving force of the constitutional violation'." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Here, Plaintiff claims to establish evidence under all four of categories of illegal policy or custom. In substance, Plaintiff only raises evidence under (3) the existence of a policy of inadequate training or supervision and (4) the existence of a custom of tolerance or acquiescence of federal rights violations. Under the failure to train or supervise category, Plaintiff establishes that 1) has an obvious need for hiring and training to avoid constitutional violations, and 2) has a pattern of conduct so pervasive as to imply actual/constructive knowledge by policy makers who failed to act on the obvious need for proper hiring or training. (ECF No. 51, PageID.1305); *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (establishing that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.").

First, Plaintiff argues that Highland Park hired Bartynski, an officer who was "criminally convicted for his use of excessive force while working as a police officer for Bay City." (ECF No. 51, PageID.1306). Plaintiff adds that Bartynski was also "terminated by the Bay City police department after an extensive internal

investigation." (*Id.*). Second, Plaintiff argues that there is evidence that there is a "widespread pattern of improper hiring police officers involved with incidents of excessive force prior to hiring by City of Highland Park." (*Id.* at 1307). Plaintiff adds that since "the mayor and police chief were involved in this hiring," it is "attributable to the City." (*Id.*).

In his deposition, Chief Chet Logan of the Highland Park police department acknowledged that "a number of police officers who were with other departments and were let go or resigned under charges . . . came to Highland Park." (ECF No. 51-6, PageID.1352). Chef Logan also acknowledges this to be "an issue for Highland Park." (*Id.*). Though Chief Logan concedes that this may be speculation, he surmises that Highland Park being an impoverished community and having some of the worst pay rates in the state may be contributing factors. (*Id.* at 1353). Highland Park needed warm bodies and was "left with . . . what was out there." (*Id.*). Since joining Highland Park, Chief Logan has observed around thirty officers who "continued their deviant behavior." (*Id.* at 1354). Twenty of them have since been terminated or have resigned. (*Id.*).

In order to prove the existence of a custom of tolerance or acquiescence of federal rights violations, the plaintiff must establish 1) the existence of a clear and persistent pattern of [illegal activity], 2) notice or constructive notice on the part of the [defendant], 3) the [defendant's] tacit approval of the unconstitutional conduct,

such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction, and 4) that the [defendant's] custom was the moving force or direct causal link in the constitutional deprivation. *Thomas*, 398 F.3d at 429 (2005).

Plaintiff presents five Highland Park officers who are part of "a clear and persistent pattern of hiring officers who had been involved in illegal activity with regard to force" in support of the existence of the first element. (ECF No. 51, PageID.1307). First, Officer Depuis, while a Southgate police officer, received a reprimand for applying unnecessary force by throwing a mentally handicapped individual to the ground and conducting knee strikes to the individual's midsection. (ECF No. 51, PageID.1292). This conduct led Depuis's Lieutenant to recommend that Depuis not be allowed to complete his probationary period as he lacked the ability to perform policework. (*Id.*).

Second, Officer Melendez had convictions for Assault and Battery and Breaking and Entering prior to being hired by the Highland Park Police Department. (*Id.* at 1292-93). Melendez lied on his job application to Highland Park by claiming he had never been convicted of a Misdemeanor or Felony. (ECF No. 51-9, PageID.1372). Yet, Officer Melendez was still hired. (ECF No. 51, PageID.1293). Plaintiff argues that this evidences Highland Park's failure to conduct background

investigation into its candidates. (*Id.*). Officer Melendez was later convicted of assault with intent to do great bodily harm. (*Id.*).

Third, Plaintiff submits that Officer Czarnecki was convicted of Assault but was nevertheless hired by Highland Park. (*Id.*). Fourth, Officer Ture was "hired and re-hired at Highland Park despite serious misconduct, including . . . allegedly twist[ing] a woman's arm and chok[ing] her during a dispute." (ECF No. 51, PageID.1293). From Officer Ture's employment at other departments, investigations revealed that he was implicated in a CSC complaint, was a suspect in four Assault and Battery complaints, and had seven disciplinary infractions while with Ferndale (three of which amounted to major violations). (*Id.* at 1294). Despite other police departments stating that Officer Ture would not be rehired, Highland Park nonetheless hired Ture. (*Id.*).

Last, Officer Bartynski was convicted of Assault during his time as a Bay City police officer. (*Id.)*. As a result of these actions, Bay City conducted an investigation into Officer Bartynski, which resulted seven different misconduct allegations against him. (*Id.* at 1296). Officer Bartynski was hired by Highland Park less than a year after this conviction. (*Id.* at 1295). This all amounts to a clear and consistent pattern of tolerating illegal activity.

Regarding the second element, Plaintiff must show Defendant's constructive or actual notice of the illegal activity. Plaintiff argues that the Mayor and Police

Chief being involved in the hiring process, including Bartynski and other officers, constitutes notice on behalf of the City. (*Id.* at 1308). According to former Chief Kevin Coney, although the Chief of Police may make recommendations regarding candidates, the final say rests with the Mayor. (ECF No. 51-21, PageID.1426). On the other hand, Former Mayor Deandre Windom testified that the responsibility of hiring officers falls somewhere between the Mayor and the Chief of Police. (ECF No. 51-22, PageID.1432-33).

Under the third element, Plaintiff argues that Highland Park's "tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" as Plaintiff has presented evidence of actual notice and constructive notice on the City, and tacit approval of officers using excessive force, including by the police chief and mayor. (*Id.* at 1308). Finally, Plaintiff shows direct causal link between Bartynski's use excessive force on Yopp and the City hiring of an officer who had been convicted of using excessive force in another department. (*Id.* at 1309).

The Court finds that Plaintiff has established a genuine dispute of material fact under the failure to train and custom of tolerance of federal rights violations *Monell* theories. Chief Logan's testimony acknowledging Highland Park's issue of hiring police officers with past infractions could lead a reasonable jury to conclude

that there exists a policy of inadequate training or supervision. Summary judgment is therefore denied for the Municipal Liability claim.

## CONCLUSION

The first sentence of Defendants' Motion [48] reads "[t]his case rests squarely on the credibility of the Plaintiff." (ECF No. 48, PageID.919). The Court agrees. The Defendant's Motion for Summary Judgment [48] is therefore **DENIED.** Summary judgment is **DENIED** for the IIED (Claim III), Excessive Force (Count IV), and Municipal Liability (Count V) claims as Plaintiff has established a genuine dispute of material fact.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [48] [50] is **DENIED**.

**SO ORDERED**.

Dated: August 20, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge